Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| Humberto García | § | |
| Andrea Soledad García | § | |
| Anna Beatriz García | § | |
| L.G., by her next friend, Andrea Soledad | § | |
| Garcia | § | Case No. 7:26-cv-00085 |
| | § | |
| On behalf of themselves and all others | § | Date: February 18, 2026 |
| similarly situated | § | |
| | § | Class Action Complaint |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| KRISTI NOEM, U.S. DEPARTMENT OF | § | |
| HOMELAND SECURITY, U.S. | § | |
| IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT, TODD M. LYONS, | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' COMPLAINT

1

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Plaintiffs bring this action against the Defendants, on behalf of themselves and all others similarly situated, who have been and will be affected by the Defendants' policy directive authorizing certain supervisory immigration officers to rely on administrative warrants to forcibly enter citizens and noncitizens' residences and arrest them therein.

Plaintiffs bring this action against Defendants because this policy directive violates their constitutional Fourth Amendment right to protection against unreasonable searches and seizures, and their Fifth Amendment right to due process.

Accordingly, Plaintiffs seek declaratory relief and injunctive relief against Defendants, to protect their rights arising under the laws and Constitution of the United States.

## I. INTRODUCTION

1. It is a bedrock of our Constitution that:

   > The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.
   > U.S. Const. amend. IV.

2. Of particular importance is the scrutiny surrounding an entry into a home. The Supreme Court of the United States has held that: "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a

2

warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573 (1980).

3. For decades, immigration officers generally operated under the confines of long-standing Constitutional mandates that entries into a home were not allowed under their own issued administrative warrants but instead needed a judicially signed warrant to pass Constitutional muster.

4. However, in a recently revealed memo, the Immigration and Customs Enforcement officers were instructed in May 2025 to violate the Fourth Amendment by using their administrative warrants for civil immigration arrests and authorizing them to enter homes to arrest individuals without a judicially signed warrant.[1]

5. In fact, this new ICE mandate is in direct contradiction to their own training handbook which states that "a warrant of removal or deportation does NOT alone authorize a 4th amendment search of any kind" and that "neither a Warrant for Arrest of Alien (I-200) nor a Warrant of Removal (I-205) authorizes officers to enter the target's residence.[2]

6. Thus, by their own training manual, ICE is aware that searches into a home

---

[1] https://www.documentcloud.org/documents/26499371-dhs-ice-memo-1-21-26/
[2] Sec. Chertoff to Sen. Dodd, Regarding an ICE operations in New Haven, Conn (Jun. 14, 2007), https://www.scribd.com/document/22093146/Michael-Chertoff-Letter-to-Senator-Christopher-June-142007; see also Nina Bernstein, Hunts for Fugitive Aliens' Lead to Collateral Arrests, N.Y. TIMES (July 23, 2007), https://www.nytimes.com/2007/07/23/nyregion/23operation.html?unlocked ("The Fugitive Operations Teams responsible do not carry search warrants or arrest warrants approved by a judge, Mr. Chertoff noted, and their [ICE's] administrative warrants of deportation do not allow entry into dwellings without consent").

are protected under the Fourth Amendment and, as such, their new memo directive is in direct violation of the U.S. Constitution.

7. In recent months, federal agents, operating under the auspices of the Department of Homeland Security ("DHS" or "Department") have carried out widespread and often violent entries into the residences of both citizens and noncitizens, allegedly in the name of carrying out lawful civil immigration enforcement operations.

8. However, the Fourth Amendment draws a firm constitutional line at the entrance to the home. "At the very core" of the Amendment stands the right of individuals to be free from unreasonable governmental intrusion into their dwellings. *Payton v. New York*, 445 U.S. 573, 589–90 (1980).

9. Defendants by their *ultra vires* directives and actions have disregarded clear statutory and constitutional limits.

10. On these bases, Plaintiffs seek a declaration from this Court stating that federal law enforcement agents cannot enter a person's home in the United States, without a properly signed judicial warrant or consent from the appropriate party. Declaratory Judgment is sought to protect Plaintiffs' rights under the laws and the Constitution of the United States, as well as the rights of all similarly situated U.S. citizens and noncitizens alike.

11. Plaintiffs also request injunctive relief, specifically an order of this Court

4

enjoining Defendants from entering residences within the United States in any manner that infringes upon rights secured by the Constitution and laws of the United States.

## II. JURISDICTION AND VENUE

12. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the Constitution and laws of the United States.

13. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (e), because Plaintiffs reside in Donna Texas.

## III.    PARTIES

14. Plaintiff Humberto Garcia is a U.S citizen who resides in Donna, Texas.

15. Plaintiff Andrea Soledad García is a U.S citizen who resides in Donna, Texas.

16. Plaintiff Anna Beatriz García is a U.S. citizen who resides in Donna, Texas.

17. Plaintiff L.G. is a U.S. citizen and minor child who resides in Donna, Texas. She is represented by her next friend, Andrea Soledad Garcia.

18. Defendant Kristi Noem is the Secretary of the DHS. She is sued in her official capacity. Defendant Noem directs each of the component agencies within the DHS. In her official capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103.

19. Defendant DHS is a cabinet-level department of the U.S. federal government. Its components include U.S. Citizenship and Immigration Services

("USCIS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE").

20. Defendant ICE is a sub-agency of DHS responsible for enforcing immigration laws.

21. Defendant Todd M. Lyons is the Acting Director of ICE. He is sued in his official capacity. In his official capacity, he authored and distributed the policy directive authorizing certain supervisory immigration officers to rely on administrative warrants to forcibly enter residences to carry out arrests.

## IV.  LEGAL AND PROCEDURAL BACKGROUND

22. At the Amendment's "very core," we have said, "stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Collins* v. *Virginia*, 584 U. S. 586 (2018).

23. Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Payton v. New York*, 445 U.S. 573 (1980).

24. The Fourth Amendment to the United States Constitution protects the people from unreasonable searches and seizures in their person, houses, papers, and effects.

25. Its purpose is to "prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."

6

*See United States v. Martinez-Fuerte*, 428 U. S. 543, 554 (1976).

26. Notably, "when it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013).

27. This includes the curtilage, that is, "the area immediately surrounding and associated with the home." *Id* (internal quotations omitted).

28. Importantly, Congress has established limits on permissible immigration enforcement actions.

29. In fact, immigration officers are specifically prohibited from conducting enforcement operations in private dwellings without a judicial warrant. *See* 8 U.S.C. § 1357(a)(3) (providing immigration officers with the power to, without a warrant "and within [25] miles from any [external boundary of the United States] to have access to private lands, *but not dwellings*, for the purpose of patrolling the border to prevent the illegal entry of aliens," even "if there is a likelihood of the person escaping before a warrant can be obtained for his arrest").

30. Implying in a policy directive to federal law enforcement officers that an administrative warrant may be sufficient "to arrest an alien in his or her place of residence prior to a final order of removal or where there is a final order of removal issued by an immigration officer"—when such a suggestion constitutes a blatant violation of both citizens' and noncitizens' Fourth

Amendment rights—is inappropriate, irresponsible, and an *ultra vires* abuse of power.

31. Additionally, though the policy directive at issue pretends to abide by the Fourth Amendment, in practice, officers are ignoring even these superficial warnings regarding Fourth Amendment protections, as exemplified by Plaintiffs' case, described below, and countless news reports across the nation.

32. The Fifth Amendment of the Constitution states that no person shall be deprived of life, liberty, or property, without due process of law.

33. Allowing even a civil arrest to occur in violation of a person's Fourth Amendment rights constitutes a violation of due process under the Fifth Amendment.

## V.    FACTUAL ALLEGATIONS

34. On January 9, 2026, between 7 a.m. and 7:30 a.m., Plaintiff Humberto García saw trucks outside the home he shares with his three U.S. citizen sisters—Plaintiffs Andrea, Anna, and L.G.— his noncitizen mother, and his noncitizen father.

35. Although Plaintiff Humberto's parents are not United States citizens, they are currently in the process of obtaining lawful permanent resident ("LPR") status.

36. Plaintiff Humberto was preparing to leave for work when he saw ICE officers

jumping over the fence surrounding his family home.

37. The ICE officers pointed their guns at Plaintiff Humberto and began to attack

him, without speaking to Plaintiff Humberto or even identifying themselves.



38.



39.

40. 

41. 



42.



43.



45.

46. The ICE officers knocked Plaintiff Humberto to the ground, scratched his face, and several agents had their feet on his back.

47. Another ICE agent kicked Plaintiff Andrea in the feet, causing her to fall to the ground. The ICE officers yelled at Plaintiff Andrea and asked for her father. At this point, Plaintiff Andrea asked the ICE officers to show proof of a judicial warrant.

48. The agents did not produce or show her such a warrant.

49. Additionally, the ICE agents accosted Plaintiff Anna, who was bruised from being so tightly gripped by the ICE officers.

50. Plaintiff L.G., a minor, was asleep at the beginning of the assault on her family home and her older siblings.

51. Plaintiff L.G. is disabled, as she suffers from a medical condition that makes her bones break easily.

52. Plaintiff L.G. woke up to ICE officers banging on the windows of the family home.

53. The ICE officers pointed guns at Plaintiff L.G. and forced her to kneel and raise her hands.

54. The ICE agents gave the family just two (2) minutes to come outside, threatening to break down the door to the family home if they did not comply.

55. Plaintiffs' noncitizen mother complied with the ICE officers' orders and came outside. However, the ICE agents entered the home without the family's consent to get Plaintiffs' noncitizen father.

56. The ICE officers took both Plaintiffs' parents into DHS custody, but kept Plaintiffs outside the family home until about 11 a.m.

57. Numerous news reports nationwide clearly demonstrate that Plaintiffs' ordeal is not an isolated incident of ICE misconduct and the violation of both citizens' and noncitizens' constitutional rights.

## VI.    CLASS ACTION ALLEGATIONS

58. Plaintiffs bring this action under Federal Rules of Civil Procedure ("FRCP") 23(a), 23(b)(2), and 23(b)(3) on behalf of themselves and a class of all other persons similarly situated.

59. Plaintiffs seek to represent the following Proposed Class: All those who have been or will be affected by the Defendants' policy directive authorizing certain supervisory immigration officers to rely on administrative warrants to forcibly enter noncitizens' residences and arrest them therein.

60. Excluded from the Class are Defendants named herein and the Agencies for which they work. Likewise excluded from the class is any judge or judicial officer presiding over this matter and any members of their family and judicial staff.

61. Class certification is appropriate because this action involves questions of law and fact common to the class; the class is so numerous that joinder of all members is impractical; the claims of Plaintiffs are typical of the claims of the class; Plaintiffs will fairly and adequately protect the interests of the class; and Defendants have acted on grounds that apply generally to the class, so that final declaratory relief and an injunction against the implementation of the policy directive is appropriate with respect to the class as a whole. *See* FRCP 23(a), (b)(2).

62. With respect to numerosity, a "plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

63. The number of actual class members is not the determinative question, as

"[t]he proper focus (under Rule 23(a)(1)) is not on the numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981).

64. In determining whether joinder of members is impracticable, a court may consider "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.

65. A class consisting of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992)).

66. At present, Plaintiffs have identified four (4) potential Class members; however, the precise number of potential Class members is still unknown by Plaintiffs at this time, and they have no way of communicating with these members. Although it is not possible to accurately state the total number of individuals who may potentially be class members, estimates indicate that there are as many as 4 million "mixed status" (i.e., composed of U.S. citizens or those with legal status and those with no legal status) households in the

United States[3] and 1.5 million noncitizens with outstanding orders of removal that may be affected by Defendants' policy directive.[4] These individuals are all potential Class members and can be identified as this matter progresses. Therefore, Plaintiffs maintain numerosity is easily met in this case.

67. With respect to commonality, the test is not demanding and is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).

68. The suit raises questions of law common to members of the proposed class, including whether the policy directive is unconstitutional on the basis that it violates Plaintiffs' Fourth Amendment right to protection against unreasonable searches and seizures and Fifth Amendment right to due process. Therefore, Plaintiffs maintain the class satisfies the commonality requirements of Rule 23(a)(2).

69. Similar to commonality, the test for typicality is also not demanding and "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightborn*,

---

[3] Jasmine Garsd, "What happens to the kids? Fearing deportation, immigrant parents make contingency plans" (Oct. 2, 2025), https://www.npr.org/2025/09/22/nx-s1-5538446/fearing-deportation-families-with-mixed-immigration-status-make-emergency-plans.

[4] Julia Gelatt and Kathleen Bush-Joseph, "Explainer: ICE Arrests and Deportations from the U.S. Interior" (February 2025), https://www.migrationpolicy.org/content/ice-arrests-deportations-interior.

118 F.3d at 426. Here, Plaintiffs' claim is typical for the claims of all Class members because each member has been or will be subject to the entry of their residence and subsequent arrest without a signed judicial warrant in violation of their Fourth Amendment right to freedom from unreasonable searches and seizures and Fifth Amendment right to due process.

70. With respect to adequate and fair representation of the class, a named plaintiff is only rendered an inadequate representative if the differences between the named plaintiff and class members creates a conflict between the named plaintiff's and class members' interests. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

71. In this case, Plaintiffs affirm that they will adequately and fairly protect the interests of the members of the Class, as they have been legally wronged by the DHS, just like all other Class members have been, and they have retained competent counsel to remedy that wrong.

72. Furthermore, Plaintiffs have no interests that are unethical or in conflict with other members of the Class. Accordingly, they maintain that they will be fair and adequate representatives of the Class.

73. Finally, Defendants have acted on grounds generally applicable to the proposed Class. Therefore, final declaratory and injunctive relief is appropriate with respect to the entire Class.

74. Having satisfied the requirements under Rules 23(a) and 23(b)(2), Plaintiffs will now address how the proposed Class also satisfies the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a class action can be maintained if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (superiority)."

75. Relevant to the Rule 23(b) requirements are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

76. The Class members share the same legal wrong committed against them by the issuance of and reliance on the policy directive, and they will have no interest in individually controlling the prosecution or defense of separate actions. Because the Class members' cases are identical to each other, in that they share the exact same questions of law and fact, they have a strong desire and interest that litigation be concentrated in one forum. Further, there will be no difficulty, on the part of Plaintiffs and their counsel, in managing a class

action complaint, as said counsel has extensive experience involving complex immigration law issues. In sum, Plaintiffs move that the proposed Class, having met all the requirements under Rules 23(a), 23(b)(2), and 23(b)(3), be certified by this Court.

## VII.   CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
### (Violation of the U.S. Const. Amend. IV)

77. Plaintiffs incorporate by reference the allegations in paragraphs 1-76.

78. The Fourth Amendment to the United States Constitution protects the people from unreasonable searches and seizures in their person, houses, papers, and effects.

79. Defendants deprived Plaintiffs of their rights under the constitution. In doing so, Defendants showed callous, willful, and reckless indifference to Plaintiffs' rights.

80. The Fourth Amendment to the United States Constitution stands as a foundational safeguard against arbitrary government intrusion. Adopted in direct response to the British Crown's use of general warrants and other forms of "unrestrained searches," the Amendment embodies the Framers' determination to protect personal security, privacy, and liberty from unjustified governmental power. *Riley v. California*, 573 U.S. 373, 403 (2014); *Payton v. New York*, 445 U.S. 573, 583 (1980).

81. As the Supreme Court has repeatedly recognized, "[o]pposition to such searches was in fact one of the driving forces behind the Revolution itself." *Riley*, 573 U.S. at 403. Consistent with that history, the Fourth Amendment strictly limits when and how the government may search or seize individuals, requiring reasonableness and, absent narrow exceptions, prior judicial authorization.

82. The Fourth Amendment draws a firm constitutional line at the entrance to the home. "At the very core" of the Amendment stands the right of individuals to be free from unreasonable governmental intrusion into their dwellings. *Payton v. New York,* 445 U.S. at 589–90.

83. Because physical entry of the home is "the chief evil against which the wording of the Fourth Amendment is directed," warrantless home searches are presumptively unreasonable. *Id.* at 585; *Florida v. Jardines*, 569 U.S. 1, 6 (2013).

84. Immigration officers may not violate a person's Fourth Amendment rights by entering an individual's home without a judicial warrant signed by a neutral arbiter or without the consent of the appropriate party.

85. They doing so goes against long-established case law and everything the Fourth Amendment stands for.

86. Furthermore, implying in a policy directive that the appropriate judicial—not

administrative—warrant or consent from the appropriate party is not needed to enter a person's home effectively gives federal law enforcement officers license to ignore the Fourth Amendment, thereby violating countless citizens' and noncitizens' constitutional rights as well as setting a dangerous precedent regarding the limits of executive authority and the very meaning and purpose of this country's legal system.

87. More than that, Defendants' refusal to effectively curtail ICE officers' unconstitutional conduct makes them complicit in the violation of clearly established Fourth Amendment protections.

88. Based on the foregoing, Defendants' conduct clearly violates the Fourth Amendment, entitling Plaintiffs to declaratory and injunctive relief.

89. The Fifth Amendment of the Constitution states that no person shall be deprived of life, liberty, or property, without due process of law.

90. Allowing even a civil arrest to occur in violation of a person's Fourth Amendment rights constitutes a violation of due process under the Fifth Amendment.

## SECOND CLAIM FOR RELIEF
### (Violation of the U.S. Const. Amend. V)

91. Plaintiffs incorporate by reference the allegations in paragraphs 1-90.

92. The Fifth Amendment of the Constitution states that no person shall be deprived of life, liberty, or property, without due process of law.

93. Any federal action taken against an individual in violation of his or her constitutional rights cannot be said to comply with due process.

94. The policy directive at issue effectively authorizes ICE agents to ignore the Fourth Amendment when conducting civil enforcement operations, and such violations are occurring in practice.

95. As a result, Defendants' conduct clearly also violates the Fifth Amendment, entitling Plaintiffs to declaratory and injunctive relief.

## VIII.  PRAYER FOR RELIEF

96. Wherefore, Plaintiffs respectfully request that this Court:

a. accept jurisdiction and venue as proper;

b. issue a declaratory judgment on behalf of Plaintiffs, declaring that the Defendants' policy directive at issue, violates Plaintiffs' rights under the Fourth and Fifth Amendments to the United States Constitution;

c. Issue an order permanently enjoining Defendants and all those acting in concert with them from enforcing or implementing the policy directive against Plaintiffs;

d. Award Plaintiffs reasonable attorney's fees, expenses, and costs of court, pursuant to the Equal Access to Justice Act, and any other applicable statute or regulation;

e. Grant Plaintiffs all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI, LLC

*/s/ Raed Gonzalez*

_____

Raed Gonzalez, Esq.
Attorney for Plaintiff
Texas Bar No. 24010063
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Phone: (713) 481-3040,
Fax:   (713)588-8683
rgonzalez@gonzalezolivierillc.com