**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Humberto Garcia, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:26-cv-00085 |
| | § | |
| Kristi Noem, et al, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS**

Defendants respectfully move to dismiss all of Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

This lawsuit arises out of Fourth and Fifth Amendment challenges to a policy directive that allegedly authorizes "certain supervisory immigration officers to rely on administrative warrants to forcibly enter citizens and noncitizens' residences and arrest them therein." Dkt. 1 at 1, ¶¶ 77-95. Specifically, Plaintiffs allege that on January 9, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers jumped the fence surrounding Plaintiffs' family house and entered the home "to get Plaintiffs' noncitizen father" and took both noncitizen parents into custody. *Id.*, ¶¶ 35, 36, 55, 56.

Plaintiffs seek a declaratory judgment that the purported policy directive "violates Plaintiffs' rights under the Fourth and Fifth Amendments to the United States Constitution" and an order "enjoining Defendants and all those acting in concert with them from enforcing or implementing the policy directive against Plaintiffs." *Id.*, ¶ 96 (Prayer for Relief).

Plaintiffs' claims should be dismissed for three reasons. First, Plaintiffs cannot bring claims on behalf of noncitizens. Second, Plaintiffs lack standing because their injury is speculative. Third, Plaintiffs fail to state a claim, because administrative warrants are permissible in the immigration context, and the Supreme Court has recognized the "impressive historical evidence of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation." *Abel v. United States*, 362 U.S. 217, 234 (1960).

**BACKGROUND**

Congress authorized Form I-205 warrants through the INA, which grants immigration officers the authority to arrest aliens and detain them prior to removal. *See, e.g.*, 8 U.S.C. §§ 1225, 1226, 1231, 1357. Specifically, the INA provides that:

- "[o]n a warrant issued by the [Secretary], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," 8 U.S.C. § 1226(a);
- "when an alien is ordered removed, the [Secretary] shall remove the alien from the United States within a period of 90 days," *id.* § 1231(a)(1)(A); and
- "[d]uring the removal period, the [Secretary] shall detain the alien." *Id.* § 1231(a)(2)(A).

By letter dated May 8, 2026, Secretary of Homeland Security Markwayne Mullin clarified ICE's position on the practice of entering an illegal alien's residence who is subject to a final order of removal with an I-205, *Warrant of Removal/Deportation*. Ex. 1, Letter from Secretary Mullin to Senator Richard Blumenthal. As noted by the Secretary, the policy was

that "[t]he alien must have been subject to a final order of removal issued by an immigration judge, the Board of Immigration Appeals, a magistrate judge, or a district court judge and there had been reason to believe the subject alien resided at and was located at the address where the I-205 was served." *Id.* Nonetheless, the Secretary has "paused the practice of entering an illegal alien's residence who is subject to a final order of removal with an I-205, *Warrant of Removal/Deportation*, while [he] assess[es] the policy." *Id.*

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss an action when it lacks subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quotations omitted). Once a Rule 12(b)(1) motion is filed, the party asserting jurisdiction bears the burden of proof. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quotations omitted). In reviewing such a motion, a court may rely on any of the following to decide the matter: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quotations omitted).

Further, a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Unsupported

factual allegations and legal conclusions, however, receive no such deference. *Id.* at 679. A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**ARGUMENT**

**I. The Court lacks subject matter jurisdiction over Plaintiffs' claims.**

Moreover, Plaintiffs seek injunctive relief "enjoining Defendants from entering residences within the United States in any manner that infringes upon rights secured by the Constitution and laws of the United States." *Id.*, ¶ 11. Such a request for relief does not put any live case or controversy before the Court, and simply asks for an order to follow the law. *See Calhoun v. F.B.I.*, 546 F. App'x 487, 489 (5th Cir. 2013) (federal subject matter jurisdiction is limited under Article III of the Constitution to "cases" and "controversies") (citing U.S. Const. art. III, § 2, cl. 1).

**A. Plaintiffs cannot bring claims on behalf of noncitizens.**

Plaintiffs' proposed class includes "all those who have been or will be affected by the Defendants' policy directive authorizing certain supervisory immigration officers to rely on administrative warrants to forcibly enter *noncitizens*' residences and arrest them therein." Dkt. 1, ¶ 59 (emphasis added). However, Plaintiffs are all U.S. citizens and cannot bring claims on behalf of noncitizens. *See De Leon v. Salinas*, 2012 WL 13240044, at *4 (S.D. Tex. 2012) (holding that plaintiff seeking declaratory relief requiring federal defendants to comply with their rules did not have standing because it would not redress injuries plaintiff had already suffered). Regarding the named plaintiffs, the complaint acknowledges that agents entered

the home "to get Plaintiff's noncitizen father" and to take Plaintiffs' noncitizen mother into custody. *Id.*, ¶¶ 55, 56. Any claims brought on behalf of noncitizens should be dismissed, which under Plaintiffs' proposed class, would be all claims brought in this class action.

**B. Plaintiffs lack standing, because the alleged harm is not imminent and is speculative.**

Federal courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Under Article III of the Constitution, federal courts have jurisdiction only over "cases" and "controversies", and "[a] proper case or controversy exists only when at least one plaintiff establishes that she has standing to sue." *Murthy v. Missouri*, 603 U.S. 43, 56-57 (2024) (quotation and citation omitted). Moreover, plaintiffs must have standing "for each claim that they press against each defendant, and for each form of relief that they seek." *Id.* at 61 (quotation and citation omitted).

As to the alleged injury, Article III of the Constitution requires Plaintiffs to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs bear the burden of establishing all three elements of standing. *Id.* To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339. Moreover, for a plaintiff to have standing to pursue "forward-looking" relief such as an injunction, a plaintiff must show that she faces "a real and immediate threat of repeated injury."' *Id.* at 58 (citation omitted).

Here, Plaintiffs seek only forward-looking relief through declaratory and injunctive relief from the Court. Dkt. 1, ¶ 96 (Prayer for Relief). Specifically, Plaintiffs seek a declaratory judgment that the purported policy directive "violates Plaintiffs' rights under the Fourth and Fifth Amendments to the United States Constitution" and an order "enjoining Defendants and all those acting in concert with them from enforcing or implementing the policy directive against Plaintiffs." *Id.*

The Supreme Court has explained that Plaintiffs do not have standing if there is no imminent immediate threat of a challenged law enforcement practice occurring to those specific plaintiffs. For example, in *City of Los Angeles v. Lyons*, the Supreme Court explained that a plaintiff who had previously been placed in a chokehold by a police officer lacked standing to seek an injunction to end the alleged chokehold policy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-10 (1983). Regardless of the allegation that "the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force", the plaintiff could not demonstrate that he had "a real and immediate threat" of being placed in a chokehold in the future. *Id.* at 105. In other words, though the plaintiff "alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, [the plaintiff] did not indicate why [he]might be realistically threatened by police officers who acted within the strictures of the City's policy." *Id.* at 106.

The plaintiff thus lacked standing, since "it is surely no more than speculation to assert either that [plaintiff] himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury." *Id.*

at 108. As the Supreme Court explained, the plaintiff "is no more entitled to an injunction than any other citizen of Los Angeles", and "a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* at 111 (citations omitted).

Likewise, in *Clapper v. Amnesty Int'l USA*, the plaintiffs lacked standing where the asserted injuries followed a speculative chain of events. In that case, the plaintiffs alleged that their communications with foreign contacts were being targeted and intercepted by the Government pursuant to a statute, because they "merely speculate[d] and ma[d]e assumptions about whether their communications with their foreign contacts w[ould] be acquired" without setting forth "specific facts" demonstrating such targeting. 568 U.S. 398, 411-12 (2013). Notably, because the statute "at most *authorizes*—but does not *mandate* or *direct*—the surveillance that respondents fear, respondents' allegations are necessarily conjectural." *Id.* at 412 (citation omitted and emphasis in original). Even if the plaintiffs could show that "the targeting of their foreign contacts [wa]s imminent," it remained speculative that the Government would use the specific statute rather than some other surveillance method. *Id.* at 412.

Thus, without a concrete, imminent risk that the individual Plaintiffs will once again be arrested pursuant to an administrative warrant in their places of residence, their injunctive claim lacks standing. *See Hussen v. Noem*, 822 F. Supp. 3d 944, 1000 (D. Minn. 2026) (no standing where "plaintiffs have no good basis to believe that law enforcement will unlawfully stop [or arrest] *them* in the future based on the prohibited factors—and certainly no good

basis for believing that any stop [or arrest] of the plaintiffs is imminent.") (quoting *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 3 (2025) (Kavanaugh, J., concurring) (emphasis in original).

In addition to lacking the requisite injury, Plaintiffs' alleged injuries are not likely to be redressable, since the law allows administrative warrants to enter a residence for immigration purposes. Therefore, Plaintiffs' claims should be dismissed for lack of standing.

**II. Plaintiffs fail to state a claim.**

**A. The challenged practice does not violate the Fourth Amendment.**

Plaintiffs bring a facial challenge under the Fourth Amendment, which protects individuals "against unreasonable searches and seizures." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 186 (5th Cir. 2018) (citing U.S. Const. amend. IV.). To succeed on such a claim, "it is not enough for the plaintiffs to demonstrate that [the challenged policy] will often cause Fourth Amendment violations"; instead, "[t]hey must establish that the mandate 'is unconstitutional in *all* of its applications.'" *Id.* at 187 (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)) (emphasis added).

As a threshold matter, it is unclear what "policy" Plaintiffs are challenging in their complaint. Plaintiffs reference a "recently revealed memo" and practices that the Government is "implying in a policy directive" yet provide no such policy. The complaint instead links to 300 pages of NBC news blasts from 2012. Dkt. 1 at 3, n.1. For example, the first email's subject line reads: "GOP Representative calls Planned Parenthood 'racist' baby killers." *Id.* Plaintiffs otherwise cite to broken links or a news article from nearly 20 years ago. *Id.*, n. 2.

Regardless, the law allows the use of an administrative warrant to authorize entry into a residence for immigration purposes. In *Abel v. United States*, the Supreme Court held that the arrest was valid under the authority of an administrative warrant. *Abel v. United States*, 362 U.S. 217, 234, 237, 239–40 (1960)). In that case, FBI officers entered the hotel room (the "then abode") of an alleged spy without a judicial warrant. *Id.* at 221. The FBI had informed the Immigration and Naturalization Service ("INS")—the precursor to ICE— that they believed the individual was "an alien residing illegally in the United States." *Id.* at 221-22. When the spy did not cooperate with FBI officers, INS officers entered and searched the room with a warrant signed by the INS District Director. *Id.* at 222-23.

On appeal, the Supreme Court explained that administrative warrants are lawful under the Fourth Amendment. The Court noted that the INA "g[ave] authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment." *Id.* at 232. Further, implementing regulations allowed District Directors of the INS to "issue these administrative warrants . . . in (their) discretion." *Id.* (parentheses in original). The Court further noted the "impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation." *Id.* The Supreme Court in *Abel* clarified that the administrative warrant was not "employed as an instrument of criminal law enforcement to circumvent the latter's legal restrictions, [but] rather than as a bona fide preliminary step in a deportation proceeding." *Id.*

The Fifth Circuit and other circuit and district courts have followed the Supreme Court's reasoning in *Abel* to conclude that administrative warrants are lawful under the

Fourth Amendment. *See City of El Cenizo*, 890 F.3d at 187 ("It is undisputed that *federal* immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability.") (citing *Abel*, 362 U.S. at 233–34); *see also United States v. Malagerio*, No. 5:20-CR-154-H-BQ-1, 2021 WL 3030067, at *6 (N.D. Tex. Feb. 22, 2021), *aff'd*, 49 F.4th 911 (5th Cir. 2022) ("Supreme Court precedent indicates that officers may enter an arrestee's home to execute an arrest pursuant to an administrative warrant.") (citing *Abel*, 362 U.S. 234, 237, 239–40); *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 878 (9th Cir. 2007) ("[D]eportation statutes going back to 1798 'have ordinarily authorized the arrest of deportable aliens by order of an executive official,' evidencing an 'overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens.'") (citing *Abel*, 362 U.S. at 233); *Lopez v. INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (noting that aliens "may be arrested to administrative warrant issued without an order of a magistrate") (citing *Abel*, 362 U.S. 217); *Lopez-Lopez v. Cnty. of Allegan*, 321 F. Supp. 3d 794, 799 (W.D. Mich. 2018) ("Specifically in the immigration context, federal law enforcement officers have a long history of using administrative warrants and arrests for purposes of deportation, dating back to 1798.") (citing *Abel*, 362 U.S. at 233); *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1066 (D. Ariz. 2018) ("Arrests based on probable cause of removability – a civil immigration violation – have been long recognized in the courts.") (citing *Abel*, 362 U.S. at 230).

Because the law allows the use of administrative warrants in the manner alleged by Plaintiffs, Plaintiffs fail to state a claim. Instead of citing cases analyzing administrative warrants, the complaint cites cases that involved *no* warrant or that apply the standard for criminal arrests, which is a higher standard that does not apply outside the criminal context.

*See Payton v. New York*, 445 U.S. 573, 586 (1980) (analyzing warrantless arrest in a criminal case). Plaintiffs' requested declaration that the policy "violates Plaintiffs' rights under the Fourth and Fifth Amendments to the United States Constitution" would therefore contradict the law in this circuit. *See* Dkt. 1, ¶ 96(b).

Plaintiffs' Fifth Amendment due process relies on the alleged violation of the Fourth Amendment. Because there has been no underlying Fourth Amendment violation, Plaintiffs similarly fail to plausibly plead a violation of the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action in its entirety.

Dated: September 3, 2026

Respectfully submitted,

AARON F. REITZ
United States Attorney

By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Texas Bar No. 24106434
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9600
Fax: (713) 718-3300
E-mail: myra.siddiqui@usdoj.gov

**CERTIFICATE OF CONFERENCE**

I certify that on September 2, 2026, I attempted to confer with counsel for Plaintiffs via email regarding the foregoing motion. I did not receive a response as to whether Plaintiffs oppose the motion.

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2026, the foregoing was filed and served on counsel for Plaintiffs through the Court's CM/ECF system.

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney