**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| Humberto Garcia, et al, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 7:26-cv-00085 |
| | § | |
| v. | § | |
| | § | |
| Kristi Noem, et. al. | § | Date: September 24, 2026 |
| | § | |
| *Defendants*. | § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs respectfully file their opposition to Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, Plaintiff states as follows:

**BACKGROUND**

Plaintiffs, on behalf of themselves and those similarly situated, filed this action against Defendants challenging Defendants' policy directive authorizing certain immigration officers to forcibly enter citizens and noncitizens' residences and arrest them therein, relying on administrative warrants. Dkt. No. 1.

Defendants' Motion to Dismiss attempts to recast this case as a challenge to the general use of administrative warrants in immigration enforcement. It is not. *See* Dkt. 25.

Plaintiffs challenge the Constitutionality of a specific practice, which is, the use of administrative warrants as purported authority for immigration officers to forcibly enter a residence without judicial authorization and arrest individuals therein. *See* Dkt. 1.

The Fourth Amendment to the U.S. Constitution does not permit the Government to convert an administrative immigration warrant into a judicial warrant for entering a home. *See Abel v. United States*, 362 U.S. 217, 232 (1960).

The Fifth Amendment likewise does not permit the Government to subject individuals to unconstitutional seizures based on their perceived immigration status. *See Bolling v. Sharpe,* 347 U.S. 497, 499–500 (1954).

The allegations in Plaintiffs' Complaint are not speculative or hypothetical. Plaintiffs allege that, on January 9, 2026, ICE officers jumped the fence surrounding Plaintiffs' family home, forcibly entered the residence for the purpose of taking Plaintiffs' noncitizen parents into custody. *See* Dkt. 1. In so doing, Defendants' ICE officers assaulted the Plaintiffs and ultimately took Plaintiffs' noncitizen parents into custody. *See* Dkt. 1.

These events provide the factual foundation for Plaintiffs' claims and demonstrate that the challenged practice is not merely an abstract policy disagreement, rather Plaintiffs experienced the alleged constitutional violation firsthand. *See* Dkt. 1.

Plaintiffs submit that Defendants' arguments for dismissal fail for the following reasons. *See* Dkt. 25.

First, Plaintiffs are not attempting to assert claims on behalf of their parents. Plaintiffs challenge the Government's conduct as it affected Plaintiffs themselves, including the warrantless entry into their home and the resulting invasion of their constitutional interests. *See* Dkt 1.

Second, Plaintiffs' injuries are neither conjectural nor dependent upon speculation about some future enforcement action. *See* Dkt 1. The Complaint alleges an actual, concrete encounter in which federal immigration officers entered Plaintiffs' home and took their parents into custody. *Id.* At the pleading stage, those allegations must be accepted as true and construed in Plaintiffs' favor.

Third, Defendants' reliance on the general proposition that administrative warrants may be used in immigration enforcement does not answer the constitutional question presented here. *See* Dkt 25. The fact that an administrative warrant may authorize an arrest in certain circumstances does not establish that it authorizes federal officers to forcibly cross the threshold of a home without judicial authorization. *See United States v. Malagerio*, 49 F.4th 911, 916 (5th Cir. 2022)

Additionally, Defendants' reliance on *Abel, supra* does not resolve this case either. *Abel* concerned the validity of an immigration arrest and the historical authority for administrative arrests, it did not establish a categorical exception to the

Fourth Amendment's protection of the home or hold that an administrative warrant authorizes officers to forcibly enter a residence. Defendants' attempt to treat *Abel* as dispositive is therefore misplaced. *See* Dkt. 25.

The Defendants also ask the Court to accept their interpretation of the challenged practice before discovery and without meaningfully addressing the constitutional limits governing entry into the home. *See* Dkt. 25. However, the Fourth Amendment's protection of the home is among its most firmly established guarantees, and the Complaint plausibly alleges that Defendants crossed that constitutional line. *See Payton v. New York*, 445 U.S. 573 (1980). As such, the Court should deny Defendants' Motion to Dismiss and allow Plaintiffs' claims to proceed.

Additionally, Defendants' reliance on the Immigration and Nationality Act ("INA") does not establish that Congress authorized the use of Form I-205 warrants to forcibly enter private residences. Indeed, the statutes Defendants cite authorize immigration officers to arrest and detain certain noncitizens, but these statutes do not authorize immigration officers to enter a home without consent or a warrant issued by a neutral judicial officer. *See* 8 U.S.C. §§ 1226(a), 1231(a), 1357.

Therefore, Defendants conflate two distinct questions: whether Congress authorized immigration officers to arrest and detain a noncitizen subject to removal, and whether Congress authorized immigration officers to cross the threshold of a private residence to effectuate that arrest.

Section 1226(a), for example, provides that "[o]n a warrant issued by the [Secretary], an alien may be arrested and detained pending a decision on whether the alien is to be removed." 8 U.S.C. § 1226(a). The provision addresses the authority to arrest and detain; it does not state that an administrative warrant authorizes entry into a home. Likewise, § 1231(a)(1)(A) establishes the Secretary's obligation to remove an alien subject to a final order within the removal period, while § 1231(a)(2) addresses detention during that period. Neither provision purports to abrogate the Fourth Amendment's separate protection of the home.

That distinction is particularly important here because an I-205 (Warrant of Removal/Deportation) is an administrative warrant issued within the Executive Branch, it is not a judicial warrant issued by a neutral judicial officer. Courts and the government's own historical guidance have distinguished administrative warrants from judicial warrants for purposes of entering a private residence. *See Payton v. New York*, *supra*; *see also Abel v. United States*, *supra*. The traditional rule is that the government may not make a nonconsensual entry into a home to effect an arrest based solely on an executive branch determination of probable cause. *See Payton*, 445 U.S. at 585, 590.

Nor does the DHS Secretary's May 8, 2026, letter demonstrate otherwise. On the contrary, the letter confirms that the challenged practice was a DHS policy under which officers relied on I-205 warrants to enter residences of individuals subject to

final orders of removal. *See* Dkt 25 at Ex. 1. The Secretary further acknowledged that DHS had "paused the practice" while assessing the policy. That admission underscores the central point here, which is the authority to enter a home did not flow automatically from the statutory provisions Defendants cite. Rather, DHS adopted a particular interpretation of those provisions to permit residential entry with an administrative warrant. *Id.*

The fact that the individual targeted by an I-205 is subject to a final order of removal does not eliminate the Fourth Amendment's protection of the home. A final removal order establishes the Government's authority to remove the noncitizen; it does not itself authorize officers to enter a constitutionally protected dwelling by force. The Supreme Court has repeatedly recognized that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton*, 445 U.S. at 585. Thus, the existence of statutory authority to arrest and remove a noncitizen cannot, without more, be transformed into statutory authority to forcibly enter a residence.

Defendants' argument also improperly assumes that because Congress authorized administrative warrants for immigration arrests, Congress necessarily authorized every method of executing those warrants. It did not. Nothing in §§ 1226, 1231, or 1357 expressly provides that an I-205 permits officers to break into a private home. And where the Government seeks to enter the home, the constitutional inquiry

is not resolved merely by labeling the document an "immigration warrant" or "Warrant of Removal/Deportation."

Accordingly, Defendants' statutory authority argument does not defeat Plaintiffs' Fourth Amendment claim. At most, the cited provisions establish DHS's authority to arrest and detain individuals subject to immigration enforcement. Those provisions do not establish that Congress authorized the forcible, nonconsensual entry into a private residence based solely on an I-205 administrative warrant.

Finally, at the pleading stage, Plaintiffs need only plausibly allege facts establishing standing and entitlement to relief. They have done so. As such, Plaintiffs submit that Defendants' dismissal request is improper and should be denied.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and should rarely be granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The plausibility standard under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), is met when plaintiffs provide "factual content that allows the court to draw the reasonable inference that the defendant is liable." In evaluating a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

## ARGUMENT

### I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS.

Plaintiffs are not asking this Court to issue an abstract command that Defendants "follow the law." Rather, the requested injunction is directed at the specific challenged conduct alleged in the Complaint, which is the forcible entry into residences using administrative warrants in a manner that violates Plaintiffs' constitutional rights. *See* Dkt. 1.

Importantly, Plaintiffs allege that this conduct has already occurred. *Id.* On January 9, 2026, ICE officers entered Plaintiffs' home by jumping the surrounding fence and forcibly entering the residence to apprehend Plaintiffs' parents. Thus, the requested prospective relief is tied to an alleged governmental practice that has already been applied to Plaintiffs and that Plaintiffs contend remains capable of affecting them and those similarly situated with them. *Id.* The fact that the requested injunction is phrased in constitutional terms does not transform the underlying dispute into an advisory opinion. *Id.*

Indeed, *Calhoun v. F.B.I.*, relied on by Defendants, does not support dismissal here. 546 F. App'x 487, 489 (5th Cir. 2013). In *Calhoun,* the Fifth Circuit addressed mootness in the context of a FOIA claim after the plaintiff had received the requested records. *Calhoun* therefore does not establish that a plaintiff lacks a live controversy whenever an injunction seeks to prohibit future unconstitutional conduct. *Id.*

Additionally, Plaintiffs do not merely request that Defendants comply with the law in the abstract. *See* Dkt. 1. Plaintiffs seek relief against the practice challenged in this action and seek to prevent its continued application in circumstances that violate the Fourth and Fifth Amendments. *Id.* Indeed, Federal courts may enjoin officials from taking specified unlawful actions. *See Ex parte Young*, 209 U.S. 123 (1908); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021).

Accordingly, Defendants' characterization of the requested relief as a generalized "follow the law" injunction does not eliminate the live controversy presented by Plaintiffs' concrete allegations. At the pleading stage, Plaintiffs have alleged an actual constitutional injury arising from the challenged policy directive and seek prospective relief to prevent its recurrence. That is sufficient to place a concrete case or controversy before the Court.

**A. Plaintiffs assert their own constitutional rights, not those of their parents**

Defendants argue that the Plaintiffs cannot bring claims on behalf of noncitizens. *See* Dkt. 25. This argument rests on a fundamental mischaracterization of Plaintiffs' claims. Plaintiffs do not seek to assert their noncitizen parents' immigration rights, to challenge their parents' removal proceedings, or to obtain relief based on injuries suffered by their parents. *See* Dkt. 1. Rather, Plaintiffs challenge the Government's entry into their home and the application of the

challenged policy to them. *Id.* The fact that Defendants entered Plaintiffs' residence for the purpose of apprehending Plaintiffs' parents does not transform Plaintiffs' claims into claims belonging to their parents. *Id.*

The Plaintiffs' Complaint expressly alleges that Defendants forcibly entered Plaintiffs' family residence by jumping the fence surrounding the property and entering the home without a judicial warrant. Dkt. 1, ¶¶ 34–56. Plaintiffs were present in the residence and directly experienced the Government's intrusion. Those allegations concern Plaintiffs' own constitutional interests in the security and privacy of their home, not merely their parents' rights. *Id.*

Plaintiffs allege that the challenged policy was applied to their home and resulted in a direct intrusion upon their own protected interests. *Id.* The fact that the Government's stated objective was to apprehend their parents does not negate the fact that Plaintiffs' home was entered pursuant to the challenged policy.

The Fourth Amendment protects the sanctity of the home, and a plaintiff need not be the intended target of a governmental intrusion to challenge conduct that directly invades the plaintiff's own protected interests. *See Steagald v. United States*, 445 U.S. 573 (1981).

Plaintiffs' status as U.S. citizens does not deprive them of standing to challenge the Government's conduct simply because the Government entered their home to apprehend noncitizen occupants. Indeed, Defendants' theory would

improperly allow the Government to avoid judicial review of the constitutionality of its conduct whenever the person targeted for arrest is a third party. *See* Dkt. 25. That is not the standing inquiry.

The relevant question is whether Plaintiffs themselves suffered an injury that is fairly traceable to Defendants' conduct and redressable by the requested relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Here, Plaintiffs allege a concrete governmental intrusion into their own residence. Dkt. 1, ¶¶ 34–56. The challenged conduct therefore bears a direct relationship to Plaintiffs asserted constitutional injuries. Dkt. 1, ¶¶ 34–56.

Additionally, at this stage, the Court need not accept Defendants' contention that every member of the proposed class is necessarily asserting the constitutional rights of a noncitizen. The proposed class does not convert Plaintiffs' claims into claims belonging exclusively to noncitizens. Dkt. 1, ¶ 59. Plaintiffs seek to challenge the Defendants' policy and practice that authorizes forcible residential entries, and they seek relief for themselves and others who have been or will be subjected to the same practice. *Id*. Whether each proposed class member ultimately satisfies the requirements of Federal Rules of Civil Procedure ("FRCP") Rule 23 is a separate question from whether the named Plaintiffs have standing to challenge the policy based on the concrete injury they allege.

Plaintiffs' proposed class is defined by those who have been or will be affected by the challenged policy, while the named Plaintiffs' standing turns on the injuries they themselves allege. Dkt. 1, ¶¶ 34–56, 59. Whether the proposed class should ultimately be certified is a separate inquiry under Rule 23 and should not be resolved by incorrectly characterizing the named Plaintiffs' claims as third-party claims, as the defendants attempt to do here. *See* Dkt. 25.

Finally, Defendants' argument also overlooks that Plaintiffs challenge the existence and implementation of a policy directive that permits immigration officers to use administrative warrants to forcibly enter residences. Dkt. 1, ¶ 30-31, 86. The existence of that policy is itself relevant to Plaintiffs' ability to bring this action on behalf of themselves and similarly situated persons who are or may be affected by the challenged policy directive.

As stated earlier, Plaintiffs need not be the noncitizens who are the intended targets of immigration enforcement action to challenge a policy that authorizes the Defendants to enter their home. *See Steagald v. United States*, *supra*.

Accordingly, the existence and application of the challenged policy directive reinforces Plaintiffs' standing. Plaintiffs have also alleged that the policy was applied to their own residence and directly affected them. Dkt. 1, ¶¶ 34–56. Therefore, they may seek to vindicate their own constitutional rights and, subject to the requirements of FRCP Rule 23, seek relief on behalf of similarly situated persons.

**B. Plaintiffs have standing to bring this claim**

Plaintiffs have alleged a concrete injury and a sufficiently close connection to the defendants' policy directive.

Defendants' reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), is misplaced because those cases involved plaintiffs who had not demonstrated a sufficient connection between the challenged governmental practice and a realistic prospect of future injury to themselves.

The present case is materially different. Plaintiffs do not challenge a hypothetical practice that might someday be applied to them. They allege that Defendants have already applied the challenged policy to Plaintiffs' own residence, forcibly entering their home with an administrative warrant and taking their parents into custody. Dkt. 1, ¶¶ 35-56. The challenged policy therefore has a direct and concrete connection to Plaintiffs.

In *Lyons*, the plaintiff had been subjected to a chokehold but could not establish that he was likely to be subjected to another chokehold in the future. 461 U.S. at 105–10. Critically, the plaintiff had not identified any facts demonstrating why he, specifically, faced a realistic threat of being subjected to the challenged practice again. *Id.* at 106, 108. By contrast, in this case, Plaintiffs allege that the

challenged practice has already been used against them at their residence. Dkt. 1, ¶¶ 35-56.

The Government's own description of the policy confirms that it concerns the very conduct Plaintiffs challenge, which is the use of administrative warrants to enter residences and arrest persons therein. Dkt. 25, ¶ 9. Unlike the generalized risk confronting the plaintiff in *Lyons*, Plaintiffs' allegations arise from an actual application of the challenged policy to them.

Nor does *Clapper* compel dismissal. *Clapper* involved plaintiffs who sought to establish standing based on a speculative chain of events, including the assumption that the Government would target their foreign contacts, that would acquire their communications, and that it would do so under the particular statutory provision challenged. 568 U.S. at 410–14. The Supreme Court emphasized that the plaintiffs had offered no specific facts establishing that the Government was actually targeting their communications. *Id.*

By contrast, in the present case, Plaintiffs allege that the Government has already implemented the challenged policy by entering their residence pursuant to an administrative warrant. Dkt. 1, ¶¶ 35-56. The injury alleged is therefore concrete and particularized, not dependent upon speculation about whether Defendants might someday employ the policy.

Defendants' formulation of the issue also improperly assumes that Plaintiffs must establish that they will necessarily be arrested again before they may challenge the continuing policy. *See* Dkt. 25. However, Plaintiffs challenge more than the possibility of a future arrest. *See* Dkt. 1. They challenge a governmental policy directive that allegedly authorizes federal officers to forcibly enter residences pursuant to administrative warrants. The alleged constitutional injury arises from the residential intrusion itself, not merely from the subsequent arrest of Plaintiffs' parents. *Id.* Plaintiffs' allegations therefore concern a governmental practice that directly implicates their constitutional interests in the security and privacy of their home.

**i. The challenged policy creates a concrete threat, not a mere generalized grievance**

Defendants also overlook the significance of the policy itself. Plaintiffs do not allege merely that immigration officers might someday engage in an unlawful entry. They allege Defendants have adopted a policy authorizing immigration officers to rely on administrative warrants to forcibly enter residences. Dkt. 1, ¶¶ 77–95. That policy was implemented against Plaintiffs' residence. Dkt. 1, ¶¶ 35-56. The existence and continued enforcement of that policy supplies the necessary connection between Plaintiffs' past injury and the prospective relief they seek.

The fact that Plaintiffs have already experienced the challenged practice distinguishes this case from one brought by "any or all citizens" seeking to challenge law enforcement conduct in the abstract. *Lyons*, 461 U.S. at 111. Plaintiffs are not asserting that they are entitled to an injunction merely because they are citizens. They are asserting that they were directly affected by the challenged policy and that the policy threatens the same constitutional interests that were violated when Defendants entered their home. Dkt. 1, ¶¶ 35-56, 77-95.

At a minimum, Plaintiffs have plausibly alleged facts sufficient to support their claims at the pleading stage. On a motion to dismiss, the Court must accept the Complaint's well-pleaded factual allegations as true and draw reasonable inferences in Plaintiffs' favor. Plaintiffs have alleged an actual application of the challenged policy to their residence, rather than relying on conjecture about whether the Government might ever employ the policy against them.

**ii. Defendants' redressability argument is likewise unavailing**

Defendants' argument that Plaintiffs' injuries are not redressable because "the law allows administrative warrants to enter a residence for immigration purposes" is also unavailing. *See* Dkt 25, ¶ 9. This argument assumes the very proposition Plaintiffs contest. *Id*.

Plaintiffs do not dispute that administrative warrants may have a role in immigration enforcement. The issue presented is whether an administrative warrant

authorizes forcible entry into a private residence without judicial authorization and whether the challenged policy directive, as implemented, violates the Fourth and Fifth Amendments. *See* Dkt. 1. That is a merits question, not a basis for finding that Plaintiffs lack standing. A plaintiff's claim is redressable where the requested judicial relief would remedy the alleged injury. *See Lujan v. Defenders of Wildlife, supra*.

Here, Plaintiffs seek a declaration concerning the constitutionality of the challenged policy and an injunction preventing Defendants from enforcing that policy against them and those similarly situated with them. *See* Dkt. 1. If the Court determines that the challenged practice is unconstitutional, the requested relief will directly address the alleged constitutional injury by preventing Defendants from continuing with the policy directive.

Therefore, Defendants cannot defeat standing simply by asserting that their conduct is lawful. Were that sufficient, virtually any constitutional challenge to governmental action could be dismissed for lack of redressability before the Court ever reached the merits. The proper question is whether the relief sought would remedy the injury alleged, not whether Defendants ultimately will prevail on their contention that the challenged conduct is authorized by law.

Finally, Defendants' reliance on *Lyons* and *Clapper* does not establish that Plaintiffs must prove with certainty that Defendants will again enter their particular residence before they may obtain prospective relief. Those cases require a

sufficiently concrete and particularized basis for future injury; they do not impose a categorical rule that a plaintiff who has already been subjected to an unconstitutional governmental practice can never challenge the continuing policy that produced the injury.

Plaintiffs have alleged precisely the type of concrete factual connection absent in *Lyons* and *Clapper*. Defendants adopted a policy authorizing the challenged conduct, Defendants allegedly applied that policy to Plaintiffs' own home, and Plaintiffs seek relief directed at preventing further enforcement of that policy. *See* Dkt. 1. Those allegations are sufficient at this stage to establish standing to bring the present claim.

## II. PLAINTIFFS HAVE STATED CLAIMS UPON WHICH RELIEF MAY BE GRANTED

Finally, Plaintiffs submit they have stated claims upon which relief may be granted. Defendants' argument rests on a fundamental conflation, the fact that an administrative warrant may lawfully authorize a civil immigration arrest does not establish that the same administrative warrant authorizes immigration officers to forcibly enter a private residence to execute that arrest. *See Payton, supra.*

Plaintiffs do not challenge the Government's general authority to issue or execute administrative immigration warrants. Rather, Plaintiffs challenge the Government's alleged policy of treating an administrative warrant, issued by an immigration officer rather than a neutral judicial officer, as sufficient authority to

forcibly enter a residence without a judicial warrant, consent, or exigent circumstances. *See* Dkt. 1. Those are distinct Fourth Amendment questions.

As stated earlier, Defendants' reliance on *Abel v. United States, supra,* does not resolve Plaintiffs' claim. The Supreme Court in *Abel* expressly noted that the petitioner's challenge to the validity of the administrative arrest warrant under the Fourth Amendment was not properly before the Court because it had not been raised below and had been expressly disavowed. *Abel v. United States,* 362 U.S. at 230–34. The Court accordingly did not hold that an administrative warrant provides immigration officers with unlimited authority to enter a private residence.

Indeed, the Fifth Circuit's subsequent decision in *United States v. Malagerio*, 49 F.4th 911 (5th Cir. 2022), confirms that Abel does not answer the precise question presented here. There, the Fifth Circuit recognized that immigration officers may seize an alien based on an administrative warrant but expressly declined to decide "whether an administrative warrant may be used to arrest an alien in his home," stating that it would "leave that important question for another day." *Id.* at 915–16. The court instead affirmed because that defendant had not been seized inside his home or its curtilage. *See United States v. Malagerio, supra.* That distinction is dispositive of Defendants' reliance on *Abel, supra.*

Again, the question is not whether an administrative warrant may support an immigration arrest. It plainly may. The question is whether such a warrant, standing

alone, supplies the constitutional authority necessary to cross the threshold of a private residence by force.

The Supreme Court's Fourth Amendment jurisprudence draws a separate constitutional line at the entrance to the home. In *Payton v. New York*, the Court explained that absent exigent circumstances, the threshold of a home may not be crossed to effect an arrest without appropriate warrant authority. Likewise, *Steagald v. United States,* recognized that the Fourth Amendment protects the privacy and security interests associated with a person's home and distinguished authority to arrest an individual from authority to enter a residence where that individual is located.

Additionally, Defendants' suggestion that *Payton* is irrelevant because it arose in the criminal arrest context misses the point. *See* Dkt 25, ¶ 11. Plaintiffs do not contend that immigration arrests are criminal arrests or that immigration officers must satisfy every requirement applicable to criminal law enforcement. *See* Dkt. 1. Rather, *Payton* and related Supreme Court precedent establish the constitutional significance of the home and the distinction between authority to seize a person and authority to cross the threshold of a residence. *See Steagald v. United States, supra; Payton v. New York, supra*. The Government cannot avoid that constitutional inquiry simply by labeling the underlying arrest "civil."

Defendants repeatedly contend that administrative warrants are lawful under the Fourth Amendment, but that contention misconstrues the issue before this Court. *See* Dkt 25, ¶ 11. The authority to arrest an individual and the authority to cross the threshold of a private residence are distinct Fourth Amendment inquiries. *See Steagald v. United States, supra; Payton v. New York, supra*. Defendant's reliance on *City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018), does not resolve the issue either.

*El Cenizo* recognized that federal immigration officers may seize aliens based on administrative warrants but it does not hold that an administrative warrant authorizes officers to forcibly enter a private residence without a judicial warrant. *See City of El Cenizo v. Texas, supra.*

Additionally, Defendants improperly characterize Plaintiffs' Complaint as presenting only a facial challenge. Dkt. 25, ¶ 8. However, Plaintiffs allege an actual application of the challenged policy directive to their own residence. Dkt. 1, ¶¶ 34-56. Thus, Plaintiffs are not asking the Court to decide the constitutionality of an abstract immigration practice divorced from any concrete application. They allege that the challenged practice was actually implemented against them. *Id*.

Also, Defendants' attack on the identification of the challenged "policy" likewise does not justify dismissal. Dkt. 25, ¶ 8. Plaintiffs' Complaint identifies the challenged practice by its substance, immigration officers allegedly have been

authorized to use administrative warrants as purported authority to forcibly enter residences and arrest persons inside. Dkt. 1, ¶¶ 77–95. The Complaint further alleges that this practice was implemented at Plaintiffs' own residence. Id. ¶¶ 34–56. FRCP Rule 8 does not require Plaintiffs to attach an internal Government memorandum to the Complaint in order to state a constitutional claim, particularly where the challenged policy and its implementation are matters within Defendants' possession and control. The supporting articles and other materials cited in the Complaint do not define the constitutional claim; the well-pleaded factual allegations do. *See* Dkt. 1. Defendants' focus on the Complaint's citations to older or allegedly broken news links therefore does not answer the allegations that matter.

At the motion to dismiss stage, the relevant question is whether the Complaint plausibly alleges facts showing a constitutional violation, not whether every supporting hyperlink constitutes independent proof of the Government's policy.

Finally, Defendants' argument that Plaintiffs' requested declaration would contradict the law in this circuit assumes the very proposition Defendants must establish, which is that an administrative immigration warrant provides authority to forcibly enter a private residence. Neither *Abel* nor *El Cenizo* establish that proposition, and *Malagerio* expressly declined to decide it. Because the precise residential-entry question remains legally distinct from the validity of an

administrative immigration arrest, Plaintiffs' Fourth Amendment claim is not foreclosed by the authorities Defendants cite in their motion to dismiss.

Plaintiffs' Fifth Amendment claim likewise should not be dismissed merely because Defendants dispute the underlying Fourth Amendment theory. Plaintiffs' Complaint alleges that Defendants' challenged practice subjects Plaintiffs to an unreasonable governmental intrusion into their home and deprives them of constitutionally protected liberty and security interests without constitutionally adequate process. Dkt. 1, ¶¶ 77-95. Whether those allegations ultimately establish an independent Fifth Amendment violation is a merits question that should not be resolved by simply assuming that the Fourth Amendment claim fails. At a minimum, because Plaintiffs have plausibly alleged an unconstitutional governmental intrusion and an actual application of the challenged policy directive to their residence, dismissal of the Fifth Amendment claim on the ground asserted by Defendants is premature. Dkt. 1, ¶¶ 35-56, 77-95.

In sum, at this stage, Plaintiffs need only allege facts that, if proven, would entitle them to relief. They have done so. Accordingly, dismissal is inappropriate because Plaintiffs have plausibly alleged both the existence of agency action and resulting constitutional and statutory harms, and discovery—not a motion to dismiss—is the proper stage to test the formality, scope, and implementation of the challenged policy directive.

## CONCLUSION

Plaintiffs have established that this Court has subject matter jurisdiction over Plaintiffs' claims, and Plaintiffs have stated claims upon which relief may be granted. For the foregoing reasons, Defendants' Motion to Dismiss should be DENIED in its entirety.

Dated this 24th day of September 2026

Respectfully submitted,

GONZALEZ OLIVIERI, LLC

*/s/ Raed Gonzalez*

______________________________

Raed Gonzalez, Esq.
Texas Bar No. 24010063
9920 Gulf Freeway, Suite 100
Houston, Texas 77034
Phone: 713-481-3040
Fax: 713-588-8683

**CERTIFICATE OF SERVICE**

I certify that on September 24, 2026, the foregoing was filed and served on Defendants' counsel of record through the Court's CM/ECF system.

/s/ Raed Gonzalez
______________________
Raed Gonzalez